Ms. Weiss, whenever you're ready. Is it Weiss or Weiss? Weiss. May it please the Court, my name is Julie Weiss and I represent the appellant, Wyoming Sawmills. Wyoming Sawmills is a now shuttered lumber mill that purchased the Wabash timber sale contract at issue in this case. For your information, the Wabash contract provided for the harvest of about nine and a half million board feet of mostly ponderosa pine on the Black Hills National Forest in South Dakota. This appeal, your honors, presents a very narrow issue of contract interpretation. Specifically, Wyoming Sawmills maintains that the trial court erred in concluding that the Forest Service had not breached the Wabash timber sale contract when it refused to grant Wyoming Sawmills 2007 request for a market-related contract term adjustment. We sometimes refer to that as MRCTA, sometimes as MRCTA. So the issue before this Court is whether Wyoming Sawmills was entitled to or could ask for reasonably the market-related contract term adjustment when it did so in 2007. Wyoming Sawmills maintains that it was eligible for MRCTA and should have been granted MRCTA. This was a matter of great consequence because a grant of the market-related contract term adjustment would have extended the deadline for the second periodic payment that was a substantial payment of about over a million dollars. It also would have extended the deadline for the termination of the contract. That didn't happen and Wyoming Sawmills shuttered its lumber mill. Because this is a pretty industry-specific provision, the MRCTA provision, I'd like to just briefly give you some information about the genesis of the market-related contract term addition. Well, let me add, just because you've got a limited amount of time and I want to ask you about it. Suppose on a highway there's a speed limit of 55 miles per hour and it says you violate the law when you cross this threshold, 55 miles. So you're driving 55 miles and then you enter another speed zone and it's 65. So your car moves up to 65, you're driving 65 and you get to the next town and the speed limit goes down to 55 again and you continue to drive your 65. It seems to me, so tell me what I'm missing, that under how you're saying this language should be construed, you would argue you're not in violation of the speed limit of 55 because you didn't cross the 55 line at the time you were in the 55 zone. You crossed it when you were in the 65 zone. Is that a legitimate analogy to the kind of argument you're making here with respect to the 10-year threshold? No, it is not. Okay. The reason it is not is because of the plain language of the contract and the regulation incorporated into the contract. The language of the contract stated that, and to make clear, both parties are in agreement. The contract stated the term of the contract should not exceed 10 years as a result of market-related contract term addition. And that is the key phrase, Your Honor, and that is why your analogy is not quite on point. The contract stated that as a result of market-related contract term addition, the contract had to exceed 10 years and that was what was prohibited. However, construing that contract according to its plain language, which is what we must do with any government contract, including a timber contract, Precision Pine case makes that clear. The plain language of the contract must be interpreted just according to dictionary definitions. And if we look at the meaning of as a result of market-related contract term addition, we have a causation requirement. We cite it in our brief to the Murakami case. Well, I don't understand, though, on the facts of this case. Granting Wyoming's 15-year contract a 2-year MRCTA extension would still result in the contract exceeding 10 years, would it not? No, Your Honor, I don't believe it would. And if you look at the Murakami case, and particularly the Gardner v. Brown case that is cited and discussed in the Murakami case, there was a dictionary definition of the term as a result of was applied to construe a statute. Gardner v. Brown is instructive because in Gardner v. Brown, there the issue was a contract provision that allowed veterans to receive some sort of redress if they were injured or there was an exacerbation of an injury for treatment at a Veterans Administration facility. And the court said that there had to be a causal link between the treatment and the injury or the exacerbation thereof. And in this case, if we apply that same analogy, the market-related contract term addition had to have a causal link to the 10-year mark being exceeded. In our case, the facts of our case were pretty unusual, Your Honors. And perhaps the Forest Service just really never considered that. Is your argument, Ms. Weiss, that, I mean, I think the record shows that at the time this issue came up, you were at the 10-year point. Is that correct? Over the 10-year. Over the 10-year point. And is your argument that it wasn't as a result of MRCTA extensions that you'd gotten there? Yes, Your Honor. Now, supposing they were all MRCTA extensions, would you then not be in front of us? Your Honor. Or if they had been, would you not be in front of us? Wyoming Sawmills would agree that if it was a MRCTA request that was taking the contract over the 10-year mark, that that would not be allowable under the terms of the contract. But in this case, Your Honors, we have a much different factual scenario. Here, the contract had exceeded the 10-year mark. A completely different contract provision had taken it over the 10-year mark. That was a contract term adjustment under one of the B clauses of the timber sale contract. And it was done for the convenience. But that depends on whether or not you want to define exceeded. You seem to be defining exceeded narrowly, like when did you exactly cross the line, as opposed to defining what exceeds 10 years, which is everything in perpetuity beyond 10 years and one day. Why should we, right? I mean, that's kind of the difference here. Why would we construe exceed to be just that one moment in time when it's the 10-year anniversary? Well, Your Honor, I do believe Gardner v. Brown talking about that causal link supports our interpretation. And I also think that the policy, which I would like to briefly touch on, of the MRCTA provision, the MRCTA mechanism, does inform this case. The MRCTA provision, this mechanism for adjusting contracts based on adverse markets, has its roots, its origins, in the really bad market conditions back in the 1980s. In 1990, the Forest Service stated that it recognized that many timber companies were holding these contracts that were non-profitable and they were facing significant financial hardship. As a result, the Forest Service also said we recognize that it's important to have a timber industry infrastructure. You need to have these timber industry companies because they're the ones that go out and do the forest restoration and health projects. And it was a result of that that the Forest Service stated we believe it's important to have a mechanism to adjust during these adverse conditions. And if the 1980s were bad, the conditions that were facing Wyoming sawmills in 2007 at the time it made its MRCTA request were even worse, Your Honors. And so that policy, which underlies this whole case, we do believe is relevant. And the plain reading of the contract does support Wyoming sawmills interpretation. The government is entitled to no special deference here because of the fact that this is a contract case involving the U.S. government. The law is clear that we have to interpret the Wabash timber sale contract based simply on the plain language of the contract. And we do believe that under Gardner v. Brown and under Murakami that there has to be a causal link between actually going over that 10-year mark and the market-related contract term addition request that was missing in this case, Your Honors. And we do believe that on the unusual facts of this case that a MRCTA was available to Wyoming sawmills. It was not granted, and Wyoming sawmills shuttered its lumber mill. And we believe that the trial court did err in concluding that MRCTA was appropriately off limits. And we would ask this court to reverse the trial court's determination. Can I just ask you one more question? I'm sure I'm missing something here because there are a lot of moving parts in terms of regulations and statutes. But the statute, 16 U.S.C. 472A, that talks about the 10-year limitation but doesn't, I don't believe, you can tell me if I'm wrong, have the resultant language. Am I right about that? It does not, Your Honor. However, the Forest Service promulgated the MRCTA regulation as a way of explaining the National Forest Management Act, section 47A.2. And I can refer you to a Federal Register citation that does, in fact, indicate that that was the promulgation of the MRCTA was to explain what it meant. And then that regulation is what's incorporated in the contract with the language? That's right, Your Honor. The language isn't identical, but for all relevant purposes, the language in the regulation is the same as the language in the contract. Including except for as the result? No, the language in the contract and in the regulation both have as a result. Yes. Thank you. Your Honor, really our argument is pretty straightforward. And we do believe that this contract, even though it might not, you know, facially you may struggle with why this particular contract should have been extended, but there have been substantial findings that public interest is served by maintaining the timber industry infrastructure. We do believe that perhaps the contract wasn't drafted as artfully as it might have been or the regulation wasn't drafted as artfully as it might have been. But the particular facts of this case simply take this contract. Is this a standard form contract? I mean, this wasn't negotiated. No, Your Honor. It is a standard form contract. I'm sorry. Go ahead. I just wanted to. So everyone gets the same contract. In relevant part, yes. Yes. This particular provision was incorporated into the contract in 1998, which was about five years after the contract had originally been promulgated. But the language originally was not substantially different. So there are certainly differences between different timber sale contracts. But for our purposes, this is a standard form contract. You're not saying that the regulation is in violation of the statute? No, Your Honor. I'm not saying that the regulation is in violation of the statute. We simply take the position that this was a circumstance that perhaps had not quite been contemplated. But given the idea that MRCTA was there to maintain timber industry infrastructure and the plain language of the contract and the language in the Murakami case and also Gardner v. Brown requiring a causal link between, as a result of MRCTA, the contract exceeding the 10-year mark where the contract already exceeded 10 years as a result of Wyoming sawmills going and doing other work on the forest, removing timber that was in urgent need of salvage because it was in proximity to a populated subdivision for the benefit of the Forest Service and the benefit of the public, on those grounds where the contract already exceeded 10 years, it was entitled to additional MRCTA. And it wasn't unlimited MRCTA, Your Honors. Recall that under this contract, there was a three-year limit on the total amount of MRCTA that was available to Wyoming sawmills. That has since changed. Now companies get longer for MRCTA. But at the time, we did have a limit. And so it was not as though this contract was going to be extended ad infinitum. There was a limit, and we do believe that on the facts of this case, the trial court erred, and this case should be remanded, Your Honors, for the trial court to determine what is the proper remedy now in light of the fact that the contract had been breached and Wyoming sawmills is no longer an ongoing concern, although we still do have a $300,000 performance bond that's sitting out there. Thank you. Mr. Gresham. Good afternoon. May it please the Court. Any reasonable person would find that the contract provision at issue here means that Wyoming was simply not eligible for an MRCTA. The contract was already, the term of the contract had already exceeded 10 years when Wyoming asked for the extension. Now Wyoming's view is that once the contract passes that 10-year threshold. It had gotten to that point, correct me if I'm wrong, as a result of one nine-month MRCTA extension and other extensions under the other extension clause? That's right. There were four other extensions. There was one MRCTA extension of nine months and there were four other extensions. That's correct, Your Honor. Wyoming's view is simply an unreasonable interpretation of this contract provision, and I'd like to expand upon an example we provided in our brief to explain why that's the case. Let's assume that this contract had a term of nine years and 10 months, and Wyoming goes to the Forest Service and says we'd like a two-year MRCTA, and the Forest Service says no. That two-year MRCTA would extend the contract beyond 10 years, so we can't grant that to you, but we will give you a short three- or four-month extension so you can do some additional cleanup work on the site. Wyoming then would come back and say, excuse me, that that short extension, that short three- or four-month extension caused the contract to pass the 10-year mark, and now it's entitled to an MRCTA. That's obviously an unreasonable result. That result makes no sense. Now, Wyoming— But what if they were already beyond the 10 years? Well, and that's the point of my example, is that asking for an extension, even if the contract is already beyond 10 years, still results in a contract that is exceeding 10 years. I think the problem with—one problem with Wyoming's argument is it confuses causation with a temporal threshold that can only be crossed once. Going from 14 years to 15 years or 15 years to 17 years— Well, the problem is it would be a lot easier if the language said is exceeding 10 years, as opposed to just if the term, the revised contract term, exceeds 10 years, right? I mean, what you're saying is is exceeding, which I understand. Yes, yes. That's a lot cleaner, right? Yes, certainly there are other ways that one could have drafted this provision that perhaps would have made it cleaner. But moreover, our view of the plain language of this contract term is also consistent with the statute and the regulations. In fact, adopting Wyoming's view would cause the Forest Service to violate the statute and its regulations. Specifically— Is there a deference requirement here under the government's interpretation of its own regulations or whatever? I thought we had all agreed it was de novo review, right? It is de novo review. That's correct. Our point is simply that when interpreting a contract, we obviously want to interpret that contract so that it's consistent with regulations and the statute. Wyoming's view— Well, the contract here parrots the regulation. It does. That's correct. And so you're arguing this is our interpretation of the regulation, right? Yes, I think that's a fair point. Is that owed deference? There are— Your interpretation of the contract is owed deference? I think our interpretation of the regulation, which mirrors the language of the contract, is certainly in— I'm just trying to help him out. It's certainly subject to deference. I know. Looking to the regulation, there actually are two provisions that are relevant. The first provision, which is 36 CFR 223.52, that essentially mirrors the language of the contract. But there's another important provision in the regulation that we cited and the trial court cited in its decision. That provision, which is 223.31, says, quote, sales contracts shall not exceed 10 years in duration unless there's a finding that better utilization of forest resources will result— there was no such finding here. Obviously, granting Wyoming an MRCTA in these circumstances would end up with a sales contract that exceeds 10 years in duration. And also, the statute, 16 U.S.C. 472a, while the statute is certainly discretionary, there are limits placed upon the discretion of the secretary to extend contracts like this, timber contracts. One of the limits is that the secretary has to find that better utilization of forest resources will result from the extension. No such finding was ever made here. So adopting Wyoming's view would cause us to violate both the statute and the regulations. In this instance, Wyoming never even responds to— But as I understand it, I thought it was the attempted interpretation of—let me just—it's 223.52 that there was a per se finding at that point of substantial overriding public interest. There was never a finding of substantial overriding public interest that would allow this contract to be extended beyond 10 years. Every finding of substantial overriding public interest that applied to this contract also had 10-year limitation language in it as well. So it simply isn't correct to say that there is a finding of substantial overriding public interest that would allow this contract to be extended beyond 10 years. But that is your argument, though, isn't it? That does seem to be Wyoming's argument. That's correct. So for all these reasons, we respectfully request that the chalkboard decision be affirmed. Thank you. Thank you. Your Honors, I would briefly rebut on two points. First, our argument does not conflict with the statute and with the regulation, the separate regulation that was cited. If you look at the National Forest Management Act, Section 472AC, the statute reads that there can be an extension based on better utilization of the various forest resources, and then it's modified by provided that you can also have an extension either under the purchaser has diligently performed or there's a substantial overriding public interest that justifies the extension, sometimes called a SOPE, a substantial overriding public interest determination. And a SOPE is inherent in a MRCTA determination. So when market-related contract term addition is warranted under the certain indices, and there is a finding by the Forest Service that purchasers are eligible for that under MRCTA, that is a per se finding of a SOPE. And, Your Honor, the 36 CFR, Section 223.31, it does, in fact, say sale contracts shall not exceed 10 years in duration unless there is a finding by the chief regarding this better utilization standard. So that regulation that is referred to only has the first part of the NFMA regulation. If you are to read the regulation the way Forest Service Council asks you to, you would have to find it ultra-virus, frankly, which I don't think anyone is arguing, because it leaves off the provided that there are other circumstances when we can extend that contract. But you don't have to worry about that, because essentially that better utilization and the SOPE, substantial overriding public interest determination, can be analogous to one another. And I refer you to 73 Fed Reg 53817, particularly at 53817 through 18. This is a federal regulation notice that was cited in the brief of Forest Service Council at page 15 in a footnote. And there the Forest Service states, a healthy timber industry infrastructure results in the better utilization of the various forest resources. It goes on to say, having numerous economically viable timber sale purchasers is in the substantial public interest for many resources. So basically the SOPE and the better utilization standards are the same. So there is no conflict. And just very quickly on your honors question, Judge Prost, about the, you know, your analogy, I would assert that if, in fact, you think your reading is better than the one promulgated by Wyoming Sawmills, then perhaps there is an ambiguity that we need to resolve by looking at some extrinsic evidence. And the one that I would particularly point the court to is the evidence that contemporaneous with the request for a market-related contract term addition on this contract, the low meadow timber sale down in southern Oregon was being granted, marked both to take it over the 10-year mark, which arguably was incorrect, and also after the 10-year mark had been passed. And the Forest Service indicated in its reply brief that that was due to a mistake over when the actual term of the low meadow contract began. I would refer your honor to a finding in the joint appendix, the declaration of the contracting officer for the low meadow timber sale, in which he stated very clearly, I know that the contract started in 1997, so there was no confusion as to the start date. So we would ask you to reverse the trial court and remand for appropriate remedy determination. Thank you. Thank you, Ms. Boyce. Case is submitted.